C. W. McCOURRY ET AL. v. B. M. McCOURRY.

(Filed 8 December, 1920.)

**Surveys—Magnetic Needle—Variation—Judgments—Boundaries.**

To ascertain a dividing line between adjoining owners of land determined by judgment in 1885, as running from a certain point west, it is necessary to take into consideration the variation of the magnetic needle, which, by common knowledge, is different in various parts of the world; and when the only evidence by expert surveyors is that this variation in this locality is one degree for every twenty years, and that by reason thereof due west then is now north 88¼, an instruction that if the fact is so found by the jury upon the evidence to answer the issue accordingly, is a correct one.

APPEAL by defendant from *Harding, J.,* at August Term, 1920, of YANCEY.

In 1885 in partition proceeding a decree was entered for the division of the land of Silas McCourry, deceased, among his children. The last line of division between the *feme* plaintiff and the defendant (which alone is here in controversy) reads: "From a poplar standing on east bank of said creek, thence west 190 poles, passing near the spring to a stake on the top of the William Griffith ridge." This description appears in the boundary of the tracts allotted to both the plaintiff and the defendant in said proceedings.

At June Term, 1914, of Yancey a judgment was signed by *Cline, J.,* in an action over the location of this line because of timber which had been cut by the defendant, and the judgment was signed by *Cline, J.,* on the issues found by the jury by which the plaintiff was given the land "to red line from 1 to 4 on the map." A writ of assistance was issued and a survey ordered to put the plaintiff into possession. When the surveyor attempted to run the line in controversy, which, according to the call in the partition proceedings, was "west 190 poles from a poplar," an admitted point, the defendant would not permit the surveyor to make allowance for the variation one degree for 20 years, which the surveyor on each side testified was the proper and customary allowance for the variation in the compass. Thereupon the plaintiff brought this action, the defendant contending that the line should run "due west 190 poles" without variation, and requested the court to so charge the jury, and claimed also that the defendant was estopped by the former judgment of *Cline, J.* The court submitted the following issue: "Does the dividing line between the plaintiff and the defendant begin at the poplar 'B' on the map, and run thence 190 poles with a variation of 1¾ degrees?" The court directed the jury, "if they believed the evidence to answer the issue 'Yes,'" and entered a judgment on the verdict rendered accordingly. Appeal by defendant.

*Watson, Hudgins, Watson & Fouts for plaintiffs.*
*Charles Hutchins and A. Hall Johnston for defendant.*

CLARK, C. J. The dividing line between the *feme* plaintiff and the defendant in the partition proceedings of their father's land in 1885 was "From the poplar (an admitted point) west 190 poles to the top of Griffith ridge." The defendant contends that the line should be so run without any allowance for the variation of the needle. The plaintiffs contend that owing to the variation of the magnetic needle that this would not be the line actually laid off in 1885, and that the true line can now be laid off only by allowing for such variation 1¾ degrees, *i. e.,* the line will now read "north 88¼ west," 190 poles.

John M. Houck, the surveyor appointed by the court in this case, testified that he made the survey; that he had been a surveyor between 50 and 60 years, and that "it is the custom of all surveyors since 1805 to allow one degree variation of the needle for 20 years, and that a line which was laid off in 1885 to run due west would now run north 88¼ west, owing to such variation in the needle.

Mr. Young, witness for the defendant, testified that he had been county surveyor for 16 years; he stated that "it is the usual custom to allow a variation of one degree for every 20 years," and on cross-examination he

said: "The proper variation for a line run in 1885 is 1¾ degrees." Though in his opinion the line could have been more properly ascertained by making the survey in a different manner, which he indicated, on this, which was the pertinent point in issue, he agreed with Mr. Houck; and the judge properly told the jury that "if they believed the evidence" to find the issue accordingly.

It is common knowledge that there is a regular variation in the compass, which is different at different places on the globe, and the testimony of both surveyors is that in this locality the magnetic north is moving westward at present one degree for every 20 years. Therefore, a line which ran due west in 1885 would now run north 88¼ west. In the course of time the variation will begin to swing back. Authoritative tables are from time to time printed by the governments of the world, showing the variation at different places, but in this case the evidence of the two surveyors was uncontradicted that for this locality the above is the customary and proper allowance, which was doubtless based upon scientific data.

Until the discovery of the magnetic needle, which became known in Europe just before the discovery of America by Columbus, ships dared not put boldly to sea, but coasted along from headland to headland, rarely out of sight of land. Something over 100 years ago it was discovered that there was a variation in the needle from the true north year by year, and varying in different localities.

Besides, the complete revolution of the earth on its own axis every 24 hours, and its annual sweep around the sun, the earth has nine other regular movements—eleven in all—one of the latter being a change in the position of the poles of the earth moving in an ellipsis by which the "north star," which should be in exact prolongation of a line through the two poles of the earth, shifts its position, relative to our north pole, which gradually moves to the west, and then in an ellipse returning to the east, and thus back to its original position. This compels a regular variation in the magnetic needle which can be calculated years in advance, and all well informed surveyors act upon and allow for such variations. There are some other variations in the needle due to local causes, such as iron in the ships, or in the ground, and the direction of valleys and streams, which need not be considered here. If the uncontradicted testimony of the experts on this case, the surveyors, is to be believed, the verdict and judgment have correctly located the line as it was actually laid off in 1885.

Light moves at the speed of 186,300 miles a second, a speed which would carry it around the earth more than 6 times in the tick of a second by the clock. Light comes from our sun, which is over 93,000,000 miles away, in a little over 8 minutes. The nearest fixed star (and all

the fixed stars are suns) is 275,000 times further from us than our sun, and it therefore takes light from it 4½ years to reach us, but the north star is more than eight times further off, and the light from it takes over 36½ years to reach us. How and why that body, at such an incredible distance, should so control the magnetic currents on this tiny planet upon which we live, and why the magnetic needle in all compasses vary with the slow wobbling of our poles relative to the north star, is not yet known, but all ships at sea at their peril must take notice of it for safe voyaging, and all surveys on land to be accurate must conform.

It may be that the pole star has not this influence, but it always marks the true north. It never sets or rises like other stars, and the only change in its relative position to the earth is caused by the elliptic revolution of our north pole.

Owing to scientific facts, the line in dispute, which was properly laid out as "due west 190 poles" in 1885, can be identified now only by setting the compass "north 88¼ west." If this were not done, the defendant would have gained and the plaintiff would have lost a strip of land covered by the variation and the timber cut thereon.

No error.